Wyatt, etc., Coal Co. *v*. Hartford Accident, etc., Co.—85 Ind. App. 548.

WYATT LUMBER AND COAL COMPANY ET AL. *v*. HARTFORD ACCIDENT AND INDEMNITY COMPANY ET AL.

[No. 12,381.    Filed January 12, 1927.]

MASTER AND SERVANT.—*Ruling setting aside award of Industrial Board for mistake held unwarranted.*—A ruling of the Industrial Board vacating an award based on a compensation agreement between an injured employee and his employer's insurance carrier, on application of the carrier alleging mistake, whereby it was agreed that the party injured was an employee of such employer, although performing work, at the time of his injury, for another party in the same line of employment, at the direction of his employer was error, where the evidence failed to show any mistake on the part of such carrier in making such agreement and did not show that it was not in possession of all the facts relating to the employment and injury.

From Industrial Board of Indiana.

Proceeding under the Workmen's Compensation Act by the Hartford Accident and Indemnity Company and others to set aside a compensation agreement and the award made thereon because of mistake in entering into such agreement, to which the Wyatt Lumber and Coal Company and another were made defendants. From a ruling of the Industrial Board setting aside the agreement, vacating the award and making an award against the named defendant, the defendants appeal. *Reversed.* By the court in banc.

*R. E. Howe* and *James L. Murray,* for appellants.
*White & Wright,* for appellees.

McMAHAN, C. J.—Forest and Oliver Pfeiffer were partners engaged in the building of houses, and located at Bremen. They had in their employment Stanley Pfeiffer. The Wyatt Lumber and Coal Company were engaged in business at Wyatt. It is to be inferred from the evidence that the Wyatt company on October 12, 1925, had an order for a number of window frames, and that its employee who had charge of and who was

engaged in making such frames broke one of his arms. Charles W. Oberlin, on behalf of the Wyatt company, asked Forest Pfeiffer to help the lumber company out by doing that work for the lumber company. No arrangements were made as to the payment for such services, nor as to how many men were to work, except that Pfeiffer was to bring his men to Wyatt and do the work at the place of business of the lumber company. Pfeiffer "was to take care of employees and insurance and was responsible to the Wyatt Lumber and Coal Company for results." He charged the lumber company sixty-five cents an hour for the time the men were at work, while he paid his men sixty cents an hour for their time. Stanley Pfeiffer was one of the employees of the Pfeiffer Brothers who went to Wyatt to help make the window frames, and while engaged in such work, he received a compensable injury. Pfeiffer Brothers reported such injury to the Industrial Board, designating the injured man as one of their employees. They also made a like report to their insurance carrier, the Hartford Accident and Indemnity Company, hereafter referred to as the indemnity company. On October 24, 1925, the indemnity company, on behalf of Pfeiffer Brothers, entered into a compensation agreement with Stanley Pfeiffer, wherein it was agreed that he was injured while in the employ of Pfeiffer Brothers; that his weekly wage was $32.40, and that he was entitled to compensation at the rate of $13.20 per week during total disability. This agreement was filed with the Industrial Board November 4, 1925, and approved by the board November 27, 1925. On February 4, 1926, the indemnity company filed its petition with the Industrial Board to set aside the compensation agreement and the approval of the same, and made the Wyatt Lumber and Coal Company and its insurance carrier, the Lumbermen's Mutual Casualty Company, defendants. It al-

leged that the agreement was entered into through a mistake, in that Stanley Pfeiffer was, at the time he was so injured, an employee of the Wyatt company and not of Pfeiffer Brothers, and that the indemnity company, in entering into the compensation agreement, relied upon the statement made to it in the report of Pfeiffer Brothers and made no investigation concerning the question as to whether the injured party was or was not an employee of Pfeiffer Brothers, and that, after having paid four weeks' ·compensation, it learned that the injured party was an employee of the Wyatt company.

On a hearing, the full board found that the agreement of October 24 was entered into as the result of a mistake and that the approval of the same should be vacated. It was also found that at the time of such injury, the injured party was an employee of the Wyatt company at a weekly wage of more than $24; that the accident which caused the injury arose out of and in the course of the employment with the Wyatt company; that, as a result of such injury, the injured party sustained a fifteen per. cent. permanent partial impairment of the left hand below the elbow, and ordered the Wyatt company and its insurance carrier to pay compensation at the rate of $13.20 per week for the period of thirty weeks from the date of the injury, and to pay the reasonable and necessary médical and hospital services for the first thirty days. From this award, the Wyatt company and the casualty company appeal and contend the award is contrary to law.

Appellants' first contention is that there is no evidence to sustain the finding of the board that the compensation agreement entered into by the indemnity company, in the name of Pfeiffer Brothers, with Stanley Pfeiffer, was entered into through a mistake. This contention it seems to us must be sustained. There is

no evidence to sustain the allegation of mistake. So far as is disclosed by the evidence, the indemnity company, when it entered into that agreement and when the same was thereafter filed and approved, was in possession of all the facts concerning the circumstances connected with the employment and injury of the injured party. The indemnity company was a party to the approval of the compensation agreement. This court, in *Aetna Life Ins. Co.* v. *Shiveley* (1918), 75 Ind. App. 620, 121 N. E. 50, referring to a compensation agreement entered into between an employer and an employee, without the knowledge of, or over the opposition of, the insurance carrier, said: "Where such an agreement is the result of mistake or is tinctured with fraud or characterized by gross irregularity affecting substantial rights, or has no meritorious foundation in fact, or the like, we do not regard it as binding on the insurance carrier, either before or after its approval, as against a proper proceeding seasonably made to right the consequent wrong." And in *Frankfort, etc., Ins. Co.* v. *Conduitt* (1920), 74 Ind. App. 584, 127 N. E. 212, this court said: "We hold that the Industrial Board has the power in case of fraud, duress, or mistake, to vacate its approval of a compensation agreement, and to entertain an application for that purpose, when made by the employee, employer, or insurance carrier." Such applications are not to be granted without some evidence to support the charge of fraud, duress, or mistake as alleged in the application.

The evidence is not such that we can say as a matter of law who the employer was. One of the Pfeiffer brothers in his testimony said the arrangement with the Wyatt company was that Pfeiffer "was to take care of employees and insurance." An inference might be drawn from the statement that "insurance" referred to compensation insurance and that the parties understood

the men whom Pfeiffer would take over to Wyatt to make the frames were to remain the employees of Pfeiffer.Brothers while doing the work, and that they were to be responsible to them for any compensation growing out of any accident while making the frames. We are not prepared to hold that a different inference might not also be drawn from the whole of the evidence.

We also call attention to the fact that there is no evidence as to the extent of the employee's injury.    It was agreed that the board might "determine the per cent. of permanent impairment" resulting from the injury. The board found there was a permanent partial impairment of fifteen per cent. of the left hand below the elbow, and awarded compensation accordingly.

Award reversed.