**INDIANA UNIVERSITY HOSPITALS, Defendant-Appellant,**

v.

**Elizabeth CARTER, Plaintiff-Appellee.**

No. 1–683A182.

Court of Appeals of Indiana, First District.

Dec. 12, 1983.

Rehearing Denied Jan. 18, 1984.

David J. Mallon, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellant.

Richard A. Young, Young & Young, Indianapolis, Robert D. Schafstall, Cutsinger & Schafstall, Franklin, for plaintiff-appellee.

NEAL, Justice.

## STATEMENT OF THE CASE

This is an appeal by defendant-appellant Indiana University Hospitals (Hospital) from a ruling by the Johnson Circuit Court granting plaintiff-appellee Elizabeth Carter's (Carter) motion to correct errors wherein the court overruled its earlier decision granting the Hospital's motion for summary judgment which was filed in response to Carter's negligence action which was brought after the full Industrial Board had approved Carter's Form 12 Workmen's Compensation Agreement.

We reverse.

## STATEMENT OF THE FACTS

On July 11, 1980, Carter, a part-time employee of the Hospital, was attacked and beaten by another Hospital employee. At the time of the incident, Carter was sleeping in a Hospital lounge, as was customary, prior to the start of her work shift. Following the assault, Hospital doctors attended to her injuries.

On December 11, 1980, Carter and a representative of the Hospital signed a Form 12 Workmen's Compensation Agreement in regard to Carter's injuries. This agreement was filed with the Full Industrial Board on December 15, 1980 and, on December 16, 1980 the Full Industrial Board approved the Form 12 Agreement. Pursuant to the approved agreement, the Hospital paid Carter $798.56 for seven weeks' compensation benefits for the period July 11, 1980 to August 28, 1980, at which time Carter returned to work.

Thereafter, Carter filed a negligence action against the Hospital seeking damages for the Hospital's failing to maintain a safe place for business invitees. In response to the Hospital's summary judgment motion, Carter filed an affidavit wherein she alleged in part, "I sincerely feel I was misled on the entire affair concerning who was to pay the bills and what courses of reimbursement were open".

## ISSUES

The Hospital presents the following two issues for review:

I.  Whether the Industrial Board of Indiana's approval of the Form 12 Agreement as to Compensation between the parties in this case for the same injuries for which plaintiff seeks recovery in this case is a conclusive determination that plaintiff's injuries arose out of and in the course of her employment with the defendant that cannot be collaterally attacked in this proceeding.

II. Whether the Industrial Board's award in the form of the approval of the Form 12 Agreement between the parties can be modified or vacated in any proceeding other than a proceeding before the Industrial Board.

## DISCUSSION AND DECISION

We shall discuss both issues together. Initially, the trial court granted the Hospital's motion for summary judgment. Subsequently, the trial court reversed its ruling by granting Carter's motion to correct errors, seeking a trial of all issues. Thus, on appeal we are faced with reviewing the denial of a motion for summary judgment.

The purpose of summary judgment is to expedite litigation which presents no genuine factual dispute and may be determined as a matter of law. *Indiana Insurance Company v. Sentry Insurance Company,* (1982) Ind.App. 437 N.E.2d 1381. When determining whether a motion for summary judgment should be granted, the trial court must consider the facts contained in the opponent's affidavits as true and resolve all doubts against the movant. *Abex Corporation v. Vehling,* (1983) Ind.App., 443 N.E.2d 1248. The Court of Appeals stands in the shoes of the trial court when reviewing the grant or denial of a summary judgment motion. *Wallace v. Indiana Insurance Company,*

(1981) Ind.App., 428 N.E.2d 1361. A summary judgment is inappropriate when information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Marsym Development Corp. v. Winchester Economic Development Commission,* (1983) Ind.App., 447 N.E.2d 1138. Improbability of recovery by one party does not justify summary judgment for the opposition. *Ogilvie v. Steele and Steele,* (1983) Ind.App., 452 N.E.2d 167.

The Hospital first points out that the Indiana Workmen's Compensation Act is the exclusive remedy of an employee injured in an accident arising out of and in the course of employment with her employer. IND.CODE 22–3–2–5 and 6; *Seaton v. United States Rubber Company,* (1945) 223 Ind. 404, 61 N.E.2d 177; *Cunningham v. Aluminum Company of America,* (1981) Ind. App., 417 N.E.2d 1186; and *O'Dell v. State Farm Mutual Automobile Insurance Company,* (1977) 173 Ind.App. 106, 362 N.E.2d 862. Furthermore, whether an injury arises out of and in the course of employment is a question of fact to be determined by the Full Industrial Board. *Lona v. Sosa,* (1981) Ind.App., 420 N.E.2d 890; and *Burger Chef Systems, Inc. v. Wilson,* (1970) 147 Ind.App. 556, 262 N.E.2d 660.

In her appellee's brief, Carter responds by insisting that she was not injured in the course of her employment, but between shifts while she was not on duty. Furthermore, Carter argues that she signed the workmen's compensation agreement thinking it was only a salary reimbursement form. She never intended to apply for workmen's compensation, but rather was contemplating filing a lawsuit against the Hospital. To support her position, Carter filed an affidavit in opposition to the Hospital's summary judgment motion. Before examining her affidavit, we must discuss the effect of the signed Form 12 Agreement approved by the Industrial Board.

Under Indiana law, by electing to come under the Workmen's Compensation Act, an employer and employee accept the procedure provided by that act for the adjudication of claims for compensation, and

they waive the right of a trial by jury. *Kottis v. U.S. Steel Corporation,* (7th Cir. 1976) 543 F.2d 22, *Cert. den.* 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594; *Grasselli Chemical Company v. Simon,* (1929) 201 Ind. 41, 166 N.E. 2; *Radanovich v. Studebaker Corporation,* (1946) 117 Ind.App. 52, 69 N.E.2d 132; and *Graver Tank and Manufacturing Corporation v. Noble,* (1933) 97 Ind.App. 307, 186 N.E. 390. An agreement, when filed with and approved by the Industrial Board has the force and effect of an award, and adjudicates the facts involved therein. *Noble, supra.*

In *Grasselli, supra,* at 52–3, 166 N.E. 2, our Supreme Court said:

"On application to the circuit court for judgment on an award in accordance with the statute, the court has no jurisdiction to review the decision of the Industrial Board, construe the statute, or determine whether the decision is correct. *Friedman Mfg. Co. v. Industrial Commission* (1918), 284 Ill. 554, 120 N.E. 460. Section 62 of the Workmen's Compensation Act, providing that judgment may be entered on the award of the Industrial Board without summons or any other prior notice, is valid, as employees and employers failing to exempt themselves from the act are presumed to consent to it, under Sections 2 and 3. This section provides a method of enforcing the collection of the award made by the Industrial Board. No objection is found to this section.

The appellant insists that it has been denied the right of a trial by jury. The complaint shows that it had elected to come within the provisions of the Workmen's Compensation Act and that the company and said Joseph Simon were bound by the terms and conditions of said act. By electing to come under that act, the appellant waived the right of trial by jury. The right to trial by jury is a right that anyone may waive if he shall see fit. *Deibeikis v. Link-Belt Co.* (1914), 261 Ill. 454, 104 N.E. 211, Ann.Cas.1915A 241."

In 82 Am.Jur.2d, *Workmen's Compensation,* Sec. 587, p. 306 (1976), the following statement addresses the impermissibility of

a subsequent action at law once a party has elected to file a compensation claim as her remedy:

"It has generally been held that a decision by a workmen's compensation board that it has jurisdiction over a particular injury with power to grant or deny an award as the facts of the case may warrant is a binding adjudication which is a bar to the subsequent maintenance of a common-law action of negligence to recover from the employer for the same injury." (Footnote omitted)

In the case at bar, the parties signed the Form 12 Agreement providing that the parties "have reached an agreement in regard to compensation for the injury sustained by said employee...". The agreement also provided as follows:

"The terms of this agreement under the above facts are as follows:

That the said Elizabeth V. Carter shall receive compensation at the rate of $114.08 per week based upon an average weekly wage of $171.12 and that said compensation shall be payable to Elizabeth V. Carter from and including the 11th ** day of July month 1980 until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of Indiana.

** employee was disabled over 21 days"

The Full Industrial Board approved the Form 12 Agreement and the Hospital paid Carter seven weeks of compensation benefits, totaling $798.56. Carter has never disputed these material facts, yet she would have us believe that she never even applied for workmen's compensation benefits. In light of the Form 12 Agreement which, on its face, refers to "compensation" no fewer than six times, we are baffled by Carter's contention that there was no intent on her part to enter into such a compensation agreement. While she explains in her brief that the words "for salary" written beside her signature proves that the agreement was only for salary reimbursement, Carter has not shown us any evidence from which we can infer that the Hospital as her employer misguided her into signing the agreement. The intent of the agreement is clear on its face.

Where there is no fraud on the part of the employer or an attempt to take advantage of an employee, the fact that the employee is ignorant of the provisions of the Workmen's Compensation Act at the time he accepts compensation from his employer with full knowledge of all the facts does not defeat the effect of such acceptance as an election to take the compensation. *Talge Mahogany Company v. Burrows,* (1921) 191 Ind. 167, 130 N.E. 865. An agreement between parties providing for compensation payments, once approved by the Industrial Board, is binding on the parties. IND.CODE 22–3–4–4; *Evans v. Enoco Collieries, Inc.* (1964) 137 Ind.App. 11, 202 N.E.2d 595; *Home Packing and Ice Company v. Cahill,* (1919) 71 Ind.App. 245, 123 N.E. 415; and *In re Stone,* (1917) 66 Ind. App. 38, 117 N.E. 669. An award, once approved, cannot be set aside in the absence of showing mistake, fraud, trickery or duress. *Wyatt Lumber and Coal Company v. Hartford Accident and Indemnity Company,* (1927) 85 Ind.App. 548, 154 N.E. 776. The Industrial Board has the power in the case of fraud to vacate its approval of a compensation agreement, and to entertain an application for that purpose. *E.J. Albrecht Company v. Michaw,* (1940) 108 Ind. App. 407, 29 N.E.2d 334.

In *Cahill, supra,* the court rejected an employer's attempt to undo an approved compensation agreement by bringing a subsequent civil action. The *Cahill* court said:

"The sufficiency of the petition to raise the question whether the injury arose out of and in the course of the employment has not been presented. But we deem it advisable to say that we doubt the propriety of permitting that question to be tried on a petition to set aside an agreement for compensation. Appellant earnestly insists that the injury did not arise out of the employment, but does not claim that there was any mistake as to any specific fact entering into this element. Apparently appellant and its in-

surance carrier were fully informed concerning every evidential fact, and from these facts they drew their own conclusion. Knowing all the details, they concluded that the injury arose out of and in the course of the employment. By making the agreement they admitted and confessed liability. *See Retmier v. Cruse* (1918), 67 Ind.App. 192, 119 N.E. 32. They recognized the agreement by continuing to make payments thereunder; but finally it occurred to them that perhaps they erred in their conclusion as to their liability. Evidently their petition was then filed in the hope that by this procedure they could have the board determine whether the injury arose out of and in the course of the employment, and thus procure a review of the very thing which they had determined for themselves. An agreement for compensation, made in compliance with the statute and approved by the board, has the force and effect of an award. *In re Stone* (1917), 66 Ind.App. 38, 117 N.E. 669. It would seem that an award resting on an agreement ought not to be set aside for the mere purpose of permitting an employer to try out the merits of his confession of liability. It may be proper in a proceeding of this character to show that there was a mistake as to some specific fact which would result in modifying the award in some particular; but we are of the opinion that the question of liability cannot be raised in this manner. It is doubtful, also, whether the statute contemplates an appeal from the action of the board with respect to petitions of this kind. The action of the Industrial Board is affirmed."

71 Ind.App. 248–249, 123 N.E. 415.

Likewise, in the present case, the Industrial Board's approval of the parties' mutual compensation agreement is a determination that the incident did arise out of and in the course of her employment. In addition, Carter signed the agreement and received the benefit payments. She cannot now complain that the incident did not occur in the scope of her employment. Carter made a binding election of remedies, precluding her from pursuing another separate remedy.[1]

At this juncture, we shall examine Carter's affidavit to determine whether it discloses a genuine issue of material fact which would permit her to bring a subsequent cause of action against the Hospital. In the first portion of her affidavit, Carter states that she was not in her employment at the time of the incident, but rather between shifts. We have already addressed this challenge above, adverse to Carter.

Her next allegation presents an entirely different attack: that she was tricked, coerced and misled into signing the agreement. Quoting from the relevant portions of her affidavit, Carter said:

"9. Sue Hill, Laboratory Administrator, and Jim Rice, Hospital Administrator, assured me that the hospital would take care of everything. Initially, Sue paid me wages for the hours I should have worked as time worked. Then after my attorney, Ezra Friedlander, notified the hospital that the insurance adjustor was to get in touch with him, Sue told me I had to fill out an incident report. She also stated that the hospital might have workmen's compensation pay part of the costs. I came in and filled out the incident report, because I was told I had to fill it out.

10. I was not informed that this would negate a claim on the insurance company. The insurance company had been notified as had the hospital of my desire to discuss adjustment. I feel I was coerced and tricked into signing the workmen's compensation papers.

11. Jim Rice talked to me on several occasions and no mention was ever made that the workmen's compensation was in lieu of the insurance company paying.

---

1. We also note that Carter has never challenged the agreement by application to the Full Industrial Board to have it set aside for fraud. Furthermore, the record does not disclose that Carter has returned any of the compensation benefits.

The insurance company was still investigating during this point.

12. I signed the form. I had to sign to receive a check for partial payment of I.U. wages I did not receive during the six weeks that I was off, and for prescriptions during this time. I noted on the form that it was only for those items and that it did not settle the claim.

13. I was not working at the time the incident occurred. I was scheduled to work at 11 p.m. The incident occurred at 8:26 p.m.

14. Although I had made clear the intention to pursue my claim with I.U.'s liability insurance company, I was told to fill out the incident report as this would probably pay part of the costs and was what I had to fill out to receive pay for the I.U. hours missed. When I signed the form for the compensation for hours missed and for prescriptions, I noted on the form that this only covered part of the claim and did not settle the claim.

15. The insurance adjustor, a Mr. Smith, I think, called me after I went back to work (after August 25th, probably in September) and made several insulting suggestions in questions about the assault. He asked if I knew the person and insinuated there was a relationship. He taped the conversation and had me in tears. I talked with Jim Rice about it right afterwards and was still in tears. Jim told me not to worry, the hospital would take care of everything for me and I would not have to talk with them again. I sincerely feel I was misled on the entire affair concerning who was to pay the bills and what courses of reimbursement were open. I was led to believe that both insurance and workmen's compensation would pay different parts and that my Wishard (full-time) salary would be compensated."

■ Ordinarily, when a party files a workmen's compensation claim which is thereafter approved by the Full Industrial Board, such action represents a valid and binding election to receive workmen's compensation benefits as the claimant's sole and exclusive remedy against the employer. *Simon, supra; Burrows, supra;* and *Cahill, supra.* One exception exists. A party to a workmen's compensation agreement can challenge the validity of that agreement in an independent tort action for fraud. *Gayheart v. Newnam Foundry Company, Inc.,* (1979) 271 Ind. 422, 393 N.E.2d 163; *Baker v. American States Insurance Company,* (1981) Ind.App., 428 N.E.2d 1342; *Cahill, supra;* and *Stone, supra.* However, an application to vacate the Full Industrial Board's approval of a compensation agreement on the grounds of fraud or trickery should be scrutinized closely and cautiously granted. *Ritman v. Wass,* (1955) 125 Ind. App. 348, 125 N.E.2d 33.

■ Evermindful of our review standard of the denial of a summary judgment motion, Carter need only show in her affidavit the existence of a material issue of genuine fact. Of course, affidavits must be made on personal knowledge, shall affirmatively show that the affiant is competent to testify on the matters included, and must set forth such facts as would be admissible in evidence. Assertions in an affidavit of conclusions of law or opinions will not suffice. *Henry B. Gilpin Company v. Moxley,* (1982) Ind.App., 434 N.E.2d 914; and *Wallace, supra.* A fact is "material" for purposes of summary judgment if it tends to facilitate resolution of any of the issues either for or against the party having the burden of proof on that issue. *Brandon v. State,* (1976) 264 Ind. 177, 340 N.E.2d 756. Affidavits which merely present legal conclusions fail to raise a factual controversy. *Center Township of Porter County v. City of Valparaiso,* (1981) Ind.App. 420 N.E.2d 1272. Even though a party against whom a motion for summary judgment is made need not present his entire case in a summary judgment proceeding, he must come forth with specific facts to show that there is a genuine issue as to the material facts. *Cook v. The Equitable Life Assurance Society of United States,* (1981) Ind.App., 428 N.E.2d 110.

■ Having closely scrutinized the portions of Carter's affidavit relating to the

allegation of fraud, we cannot discern a single factual event, statement or action by the Hospital which would support such a claim. Carter has failed to produce specific facts of coercion, trickery or misrepresentation. All of her remarks represent personal conclusions which would not be admissible in evidence, and which the trial court could not properly consider in ruling on the Hospital's motion. While we are aware that the improbability of recovering by one party does not justify summary judgment for the opposition, *Grutka v. Clifford,* (1983) Ind.App., 445 N.E.2d 1015, Carter has failed to set forth any material facts in her affidavit other than her conclusory opinions. Therefore, the trial court should have denied her motion to correct errors, and left standing its earlier ruling in favor of the Hospital's summary judgment motion.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.